**CASE NOS. 26-2029, 26-2030**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FIRST CIRCUIT**

---

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, et al.,
*Plaintiffs-Appellees*,

v.

DONALD J. TRUMP, in his official capacity as the President of the United States of America, et al.,
*Defendants-Appellees.*

STATE OF MISSOURI, et al.,
*Intervener Defendants-Appellants.*

---

STATE OF CALIFORNIA, et al.,
*Plaintiffs-Appellees*,

v.

UNITED STATES POSTAL SERVICE, et al.,
*Defendants-Appellees.*

STATE OF MISSOURI, et al.,
*Intervener Defendants-Appellants.*

---

Appeal from the U.S. District Court for the District of Massachusetts
The Honorable District Court Judge Indira Talwani
Case Nos. 1:26-cv-11549-IT, 1:26- cv-13917-IT

---

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

Louis J. Capozzi III, #1215872
*Solicitor General*
Benjamin S. Gilberg, #1223910
*Deputy Solicitor General*
J. Michael Patton, #1223909
*Deputy Solicitor General*
Graham D. Miller, #1222440
*Deputy Solicitor General*

ATTORNEY GENERAL'S OFFICE
Post Office Box 899
Jefferson City, MO 65102
(573) 751-1800
Louis.Capozzi@ago.mo.gov

*Counsel for the State of Missouri*

# TABLE OF CONTENTS


INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 1

BACKGROUND ........................................................................... 4

I. The Ballot Mail for Federal Elections Rule .................................... 4

II. Procedural History ........................................................ 5

ARGUMENT ............................................................................. 7

I. The States have a strong likelihood of success on the merits. ........ 7

A. The LWV Appellees lack standing. ........................................ 7

B. The Rule is lawful. ........................................................... 9

1. The Rule is permitted under Title 39. ........................... 9

2. The Rule is constitutional. ......................................... 14

3. The Rule does not create an unauthorized category of nonmailable matter. ............................................. 15

4. The Rule does not require USPS to provide non-postal services. ........................................................... 16

5. The Rule does not discriminate among users of the mail. .................................................................... 16

6. The Rule did not need to be reviewed by the Postal Regulatory Commission. ............................................. 17

7. The Rule does not violate the Voting Rights Act. ....... 19

8. The Rule does not violate the Privacy Act. .................. 20

II. The other stay factors favor Intervener States. ............................ 22

A. Intervener States will be irreparably injured absent a stay. ..................................................................... 22

B. The public interest favors a stay. .......... 22

III. At a minimum, the Court should give States the *option* to comply with the Rule .......... 23

CONCLUSION .......... 24

CERTIFICATE OF COMPLIANCE .......... 29

CERTIFICATE OF SERVICE .......... 30

## INTRODUCTION AND SUMMARY OF ARGUMENT

USPS's Ballot Mail for Federal Elections Rule ("Rule") is not a federal takeover of elections. If it were, Intervener States would oppose it. But States retain complete control over who is eligible to vote by mail, just as they always have. 91 Fed. Reg. 54966, 54969 (Aug. 26, 2026) (to be codified 39 C.F.R. pt. 111). And under the Rule, USPS is not authorized to second-guess the States' submissions. *Id.* Instead, USPS merely does for election mail what it has long done for many other types of mail—impose modest conditions that increase the security of mail-in voting, allow tracking through barcodes, and prevent violations of federal law.

The District Court ignored USPS's longstanding authority to regulate mail, including election mail. Indeed, USPS has recommended certain requirements for election mail—like using an "Official Election Mail" label. *See, e.g.*, Election Mail, USPS (accessed Aug. 27, 2026).[1] Under the District Court's reasoning, however, even making these recommendations mandatory would be unlawful, and federal election mail be made available on whatever conditions States or private litigants

[1] https://about.usps.com/what/government-services/election-mail/.

demand. Title 39 rejects this position, as it gives USPS "broad[]" authority "to adopt rules and regulations" governing the mail. *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 123 (1981).

This Court should stay the District Court's preliminary injunction. *First*, the League of Women Voters of Massachusetts (LWV) Appellees still lack standing. Their claimed diversions of resources in response to the Rule are not cognizable injuries. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024). And their asserted fears of disenfranchisement are too speculative and dependent on the "action[s] of some third party not before the court." *Allen v. Wright*, 468 U.S. 737, 757 (1984). Only *States* are required to satisfy the Rule's modest conditions if they intend to allow their citizens to vote by mail; and only States have standing here.

*Second*, all Appellees are unlikely to succeed on the merits because the Rule does not exceed USPS's statutory or constitutional authority. Under Title 39, USPS has a general power to "to adopt, amend, and repeal such rules and regulations … as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service." 39 U.S.C. § 401(2). The statute also

broadly gives USPS "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." *Id.* § 401(10). Inherently, the statute recognizes that USPS—rather than federal courts—is most likely to have the expertise to decide how mail should be processed and delivered. *See, e.g.*, *Rockville Reminder Inc. v. U.S. Postal Serv.*, 480 F.2d 4, 7 (2d Cir. 1973) (applying deferential standard of review to USPS regulations). Nor do the Rule's modest mailpiece design and data reporting standards infringe on State sovereignty. In fact, it states the opposite: "States will retain full autonomy to decide whether (and to what extent) they utilize the U.S. Mail as part of their electoral systems and who can use ballot mail to cast a vote." 91 Fed. Reg. at 54973.

*Third*, the other equitable factors favor a stay because Intervener States would be irreparably harmed by the loss of election integrity measures they cannot implement on their own and because the public benefits from lawful election security measures.

*Finally*, even if the Court is inclined not to stay the preliminary injunction, it should limit its scope to Plaintiff States so as not to improperly allow nationwide relief. *Trump v. CASA, Inc.*, 606 U.S. 831,

861 (2025). The Court should give States (like Missouri) the *option* to comply with the Rule for the 2026 General Election. Doc. 234-1, Decl. Hoskins ¶9, *LWV*, No. 1:26-cv-11549-IT. Such a limit would also serve the public interest by providing real-world evidence on how easy it is to implement the Rule. *See id.* ¶¶5–9.

## BACKGROUND

### I. The Ballot Mail for Federal Elections Rule

On August 26, 2026, USPS finalized the Rule. The Rule amends USPS's Domestic Mail Manual to place modest reporting and envelope design requirements on federal ballot mail. Specifically, the Rule requires that federal ballot mail be mailed in an envelope that (1) includes the official election mail logo, (2) is automation compatible, and (3) includes a unique barcode specifying the delivery zip code. 91 Fed. Reg. at 54990–91. Authorized ballot mailers are responsible for creating the barcodes and printing the envelopes. *Id.* at 54991. The Rule also requires States to share with USPS (1) the names of voters receiving a mail-in ballot, (2) their addresses, and (3) each voter's unique barcode for outbound and inbound ballot envelopes. *Id.*

The Rule does not impose any federal voter eligibility requirements. In fact, it precludes them: "This rule relates only to the use of the U.S.

Mail. The Postal Service does not purport to alter the eligibility of any individual to vote under state or federal law. The Postal Service does not have any legal responsibility for management of state voter rolls or administration of federal elections within each State. States are fully responsible for the contents of each State's Mail-In and Absentee Participation List." *Id.* at 54991–92. States thus "retain full autonomy to decide whether (and to what extent) they utilize the U.S. Mail as part of their electoral systems and who can use ballot mail." *Id.* at 54973. USPS cannot "second-guess" a State's participation list, nor can USPS "inspect[] [] a mail-in ballot's contents, review [an] individual voter's eligibility, or audit[] [] state voter rolls." *Id.* at 54969. USPS is concerned with verifying only one thing: adherence to the modest mailpiece design and data reporting standards. *Id.*

## II. Procedural History

Both sets of Appellees previously challenged a related executive order "direct[ing] the Postal Service to 'initiate a proposed rulemaking' that include[d]" the Rule's provisions. *See Trump v. California*, 609 U.S.

---, 2026 WL 2473573, at *1 (Aug. 24, 2026) (per curiam).[2] After the District Court enjoined USPS from conducting the proposed rulemaking for the 2026 midterms and this Court denied a stay request, the Supreme Court granted the stay on standing grounds. *Id.* at *4.

After USPS issued the Rule on August 26, both sets of Appellees reinitiated their challenges. LWV Appellees filed a supplemental complaint, Doc. 205, *LWV*, No. 1:26-cv-11549-IT, and State Appellees filed a new lawsuit, Doc. 1, *California*, No. 1:26-cv-13917-IT.[3]

On August 27, the District Court entered a TRO against the Rule. Doc. 218, *LWV*, No. 1:26-cv-11549-IT; Doc. 31, *California*, No. 1:26-cv-13917-IT. On September 4, the District Court granted a preliminary injunction against the Rule. Doc. 285, *LWV*, No. 1:26-cv-11549-IT; Doc. 156, *California*, No. 1:26-cv-13917-IT ("Order"). In doing so, the District Court denied a request for a stay pending appeal. Order at 47.

---

[2] The District Court granted permissive intervention to Intervener States to defend their interests in bolstering the security of their elections. Doc. 179, *California v. Trump*, No. 1:26-cv-11581-IT; Doc. 106, *LWV*, No. 1:26-cv-11549-IT.

[3] The District Court also granted Intervener States permissive intervention in this suit. Doc. 50, *California*, No. 1:26-cv-13917-IT.

## ARGUMENT

### I. The States have a strong likelihood of success on the merits.

#### A. The LWV Appellees lack standing.

To establish Article III standing, plaintiffs must point to an injury with "a close historical or common-law analogue." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021). Fears about hypothetical events dependent on third parties not before the Court are not cognizable injuries. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10, 414 n.5 (2013). Nor are expenses incurred by organizations to educate members or the public about legal changes. *See All. for Hippocratic Med.*, 602 U.S. at 394.

Applying these principles, LWV Appellees lack standing. They allege that they "will need to develop and translate new materials explaining the changes to mail voting, revise scripts, retrain volunteers, and educate voters" which will require "expend[ing] additional staff time and money" and "divert" resources from their "core business activities of providing the voter education and assistance." Doc. 205 ¶¶50–51, *LWV*, No. 1:26-cv-11549-IT. But the Supreme Court explicitly rejected these exact alleged injuries in *Alliance for Hippocratic Medicine*. *See* 602 U.S. at 394. Alleging that a rule "impair[s]" an organization's "ability to

provide services and achieve their organizational missions … does not work to demonstrate standing." *Id.* Nor can an organization "manufacture its own standing" by diverting resources to "engag[e] in public advocacy and public education." *Id.*

LWV Appellees also allege injuries based on "confusion about how the Final Rule will impact [voters'] mail ballot[s]." Doc. 205 ¶¶58–60, *LWV*, No. 1:26-cv-11549-IT. But "confusion, absent more, is not a concrete injury under Article III." *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022). Nor have LWV Appellees made the mandatory showing that there is "a close historical or common-law analogue for" this "injury." *TransUnion LLC*, 594 U.S. at 424.

Alternatively, LWV Appellees allege disenfranchisement under the theory that States will not agree to or will not be able to comply with the Rule's requirements. But this is too speculative to confer standing. Indeed, there is no reason to speculate States would not comply with the Rule and make mail voting available. *See* 91 Fed. Reg. at 54979. That is certainly Intervener States' intent. Doc. 234-1, Decl. Hoskins ¶5, *LWV*, No. 1:26-cv-11549-IT. Given the lack of evidence that States will not comply, Article III prohibits courts from speculating about whether that

"harm will eventually materialize." *Trump v. California*, 2026 WL 2473573, at *2.

### B. The Rule is lawful.

#### 1. The Rule is permitted under Title 39.

The District Court held that Congress has not authorized USPS to regulate election mail. *See* Order at 28–30. This is wrong. The Rule merely imposes modest conditions on sending ballots, which USPS's governing statute broadly authorizes. Indeed, USPS has the general power to "to adopt, amend, and repeal such rules and regulations … as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service." 39 U.S.C. § 401(2). The statute also gives USPS "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." *Id.* § 401(10). The statute recognizes that USPS—rather than federal courts—is most likely to have the expertise to decide how mail should be processed and delivered. *See, e.g.*, *Rockville Reminder Inc.*, 480 F.2d at 7 (applying deferential standard of review to USPS regulations).

The Supreme Court has directly addressed the scope of § 401(2), stating that USPS is "broadly empowered" to adopt rules and regulations

designed to accomplish an efficient system of collecting, sorting, and delivering mail nationwide. *Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123. Under § 401(2), USPS may promulgate regulations to further the objectives of Title 39, and this rulemaking authority even extends to other statutes outside of Title 39, so long as their purpose is properly connected to that title. *Associated Third Class Mail Users v. U.S. Postal Serv.*, 600 F.2d 824, 826 n.5 (D.C. Cir. 1979). This interpretation of § 401(2) forecloses Appellees' suggestion that USPS lacks authority to regulate election mail.

Additionally, USPS has broad authority "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail," 39 U.S.C. § 404(a)(1), and "to investigate postal offenses and civil matters relating to the Postal Service," § 404(a)(6). That language surely reaches using federal mail to cast ballots that violate federal law. *See* 18 U.S.C. § 611; 52 U.S.C. § 20511.

The breadth of Title 39 also recognizes USPS's "[b]road rule-making authority" to promulgate regulations addressing a wide variety of postal-related issues. *See U.S. Postal Serv. v. Brennan*, 574 F.2d 712, 716 (2d

Cir. 1978). USPS has a long history of imposing conditions on sending various types of mail, even those not specifically enumerated in Title 39. *See, e.g.*, *Cremated Remains Packaging Requirements*, 90 Fed. Reg. 9843 (Feb. 19, 2025) (regulating mailing of cremated remains, including a tracking barcode); *Restricting the Mailing of Replica or Inert Explosives*, 75 Fed. Reg. 282 (Jan. 5, 2010) (regulating mailing of replica explosives, including in-person presentation). This Rule continues in this long tradition.

The plain text of § 401(2) unambiguously authorizes the Rule. Requiring States to specify *who* is eligible to receive ballots through the mail is a "regulation[]" "necessary in the execution of [USPS's] function[]" of ensuring the secure delivery of mail. And it is "necessary" based on "other functions as may be assigned to the Postal Service under any provisions of law outside of this title"—here, ensuring that the mail is not used to cast ballots that violate federal law. *See* 18 U.S.C. § 611; 52 U.S.C. § 20511. The clarity of the statutory text forecloses Appellees' case. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 177 (2004) ("The inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

Unable to grapple with the text, Appellees invoke the major questions doctrine to ask the Court to narrow artificially § 401(2)'s construction. Appellees' invocation of the major questions doctrine is only plausible because they frame the Rule at a high level of generality using hyperbole and misrepresent the Rule as regulating voter eligibility. Doc. 207 at 13, *LWV*, No. 1:26-cv-11549-IT. At this abstract level of generality, "almost every large industry would qualify as one of 'vast economic and political significance.'" *SEC v. Terraform Labs Pte. Ltd.*, 684 F.Supp.3d 170, 189 (S.D.N.Y. 2023). But when properly framed, the Rule is not an "unheralded power representing a transformative expansion in [USPS's] regulatory authority." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (internal quotations and citation omitted). The Rule merely requires States to provide a list of individuals *they deem* eligible to vote by mail—so that USPS can assign security barcodes to assist in tracking in election mail. 91 Fed. Reg. at 54969. The States surely already keep lists of individuals they deem eligible to vote by mail, as Appellee States acknowledged. Doc. 155, Hr'g Tr. 85:6–20 (June 2, 2026), *LWV*, No. No. 1:26-cv-11549-IT. Requiring States to provide this already-existing list and using unique barcodes for each voter is simply a new

instantiation of authority long exercised by USPS. *See Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123.

Nor are the relevant major questions doctrine markers present here. The Supreme Court has previously suggested that a rule implicates a major question if it imposes an "economic impact" of around $50 billion. *See Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764 (2021) (per curiam). Appellees' alleged compliance costs are *de minimis* by comparison. Doc. 207 at 16–17, *LWV*, No. 1:26-cv-11549-IT. Nor are there outlandish implications to USPS's regulatory theory. *See West Virginia*, 597 U.S. at 722. Whereas the EPA's regulatory theory in *West Virginia* would have given it the power to shut down power plants, *see id.* at 722, USPS's theory is merely that it can impose conditions on the sending of mail—a reality anyone who has ever bought a postage stamp understands. And while mail voting—as a general matter—is controversial, *cf. West Virginia*, 597 U.S. at 732, USPS is *not* claiming that it can bar States from sending election mail or review States' participation lists. USPS's regulation is more akin to EPA trying to limit carbon emissions by mandating the use of new technology for smokestacks—something the Supreme Court agreed would not be a major question even though it

related to a nationwide debate about climate change. *See West Virginia*, 597 U.S. at 725.

**2. The Rule is constitutional.**

Despite USPS having clear statutory authority, the District Court suggested that election-related mail must be treated differently because of the Elections Clause. *See* Order at 27. While the Elections Clause empowers Congress to set rules for federal elections, U.S. Const. art. I, § 4, the Constitution also specifically authorizes Congress to set rules for a federal postal service, *id.* art. I, § 8, cl. 7. As discussed above, Congress delegated broad authority to USPS to regulate the mail. Under plain statutory text, that broad authority extends to election mail—just like any other type of mail. This is plainly consistent with Congress's authority under the Elections and Postal Clauses.

Nor does the Rule infringe on State sovereignty in violation of the Elections Clause or Tenth Amendment. It does not determine voter qualifications or intrude on any other powers reserved to the States. Again, "States … retain complete autonomy to determine the extent to which they utilize the postal system as an aspect of their elections" and, assuming they do decide to utilize it, "States maintain complete control

over their own voter registration rolls, deciding who within their jurisdiction is eligible to vote by mail." 91 Fed. Reg. at 54969. By its plain terms, the Rule makes clear that States retain sovereignty over voter eligibility.

**3. The Rule does not create an unauthorized category of nonmailable matter.**

The District Court also found the Rule unconstitutionally prohibits mailing of non-compliant ballots. Order at 30–31. But the Rule does not create a new category of nonmailable matter, either on its face or through any reasonable interpretation. USPS has represented that it "hopes to mail as many lawful ballots as the States wish to send, no more and no less." Doc. 17 at 10, *California*, No. 1:26-cv-13917-IT. By Appellees' logic, for example, USPS's decision to require cremated remains to be transported through specific types of USPS-provided boxes with tracking barcodes make the remains nonmailable. *See generally* 90 Fed. Reg. 9843. That was not the case then and it is not so now.

Although the District Court did not rule on Appellees' alternative arguments, Intervener States address them due to the time-sensitive nature of these cases.

#### 4. The Rule does not require USPS to provide non-postal services.

The Rule's conditions on transmission of election mail are neither non-postal nor services. The Postal Regulatory Commission has defined "service" to mean "any ongoing commercial activity offered to the public for the purpose of financial gain." *U.S. Postal Serv. v. Postal Regul. Comm'n*, 599 F.3d 705, 708 (D.C. Cir. 2010). But the only thing the public receives by USPS requiring unique barcodes for election envelopes is added security for their ballots. There is nothing commercial about that. And while not a service, the Rule is postal in nature. Election mail, like any other type of mail sent through USPS, is postal. If rules governing requirements for a specific type of mail to be sent is not so, it is hard to imagine what would qualify as being postal.

#### 5. The Rule does not discriminate among users of the mail.

Appellee States have argued the Rule is unlawfully discriminatory because "a ballot mailed to a voter on a USPS Mail Ballot List which conforms to the Rule's envelope design and review standards will presumably be accepted and delivered, while identical ballot mail that does not comply with the Rule's conditions (but is otherwise lawfully posted) will be rejected and returned." Doc. 5 at 12, *California*, No. 1:26-

cv-13917-IT. By that logic, any condition on any type of mail would also be unlawful. For example, stamp requirements would be unreasonably discriminatory because some mail of identical weight without sufficient postage will not be accepted. But neither set of requirements are discriminatory under § 403(c) for two reasons. First, the Rule applies equally across all States and authorized ballot senders. And second, because § 403(c) prohibits "undue or unreasonable discrimination" while "providing services and in establishing classifications, rates, and fees." As discussed above, the Rule is not a service, and it does not establish any classifications, rates, or fees.

**6. The Rule did not need to be reviewed by the Postal Regulatory Commission.**

The Rule was not required to be reviewed by the Postal Regulatory Commission. Section 3661 "appl[ies] to only a specified class of decisions." *Buchanan v. U.S. Postal Serv.*, 508 F.2d 259, 262 (5th Cir. 1975). To determine if USPS's decision is required to be reviewed by the PRC, courts evaluate: (1) if there is "some meaningful impact on service"; (2) the change must "qualitative[ly]" alter "'the nature of postal services'"; and (3) the "change must affect service" nationwide. *Id.* at 262–63 (quoting 39 U.S.C. § 3661(b)). The Rule operates nationwide so the third

factor is met. *See* 91 Fed. Reg. at 54990–92. However, the first two factors are not.

The first factor is not met because, contrary to Plaintiff States' unsupported characterization, "election mail" is not a "service" under § 3661(b). Election mail is not a "commercial activity offered to the public for the purpose of financial gain." *Postal Regul. Comm'n*, 599 F.3d at 708. Rather, "services" are "operational changes" to the postal system. *See, e.g.*, *New York v. Trump*, 181 F.4th 132, 136 (D.C. Cir. 2026) ("number of high-speed mail sorting machines," "employee overtime," "late or extra mail delivery trips," "sequence" of "sort[ing] and deliver[ing] the mail"). Here, the Rule only imposes data and design requirements; it does not alter the class of service for election mail, so it does not satisfy the first factor.

Nor is the second factor met. Appellee States suggest that preventing the unauthorized transmission of ballots changes "the availability of postal services." *Buchanan*, 508 F.2d at 263. But the Rule alters *how* States can mail ballots. It does not alter the availability of postal services as it merely alters *what* qualifies for mailing. So even if the Rule alters a service, the Rule will not qualitatively impact services.

As the Rule does not satisfy the first two *Buchanan* factors, the Rule is not subject to PRC review. *See* 508 F.2d at 262–63.

If Appellees are correct that the Rule required pre-promulgation review by the PRC, then § 3661 is unconstitutional to the extent it prevents USPS from implementing the Rule consistent with the President's wishes. Article II of the Constitution generally requires that the President have supervisory control over the executive branch. *Trump v. Slaughter*, 146 S. Ct. 2283, 2294–95 (2026). The PRC is set by statute as an independent agency. 39 U.S.C. § 501. Requiring a separate entity to review a presidential directive before it can be carried out unduly interferes with the President's Article II authority. *See Myers v. United States*, 272 U.S. 52, 135 (1926). And if the PRC indeed *must* review postal regulations like the Rule, § 3661(b) is unconstitutional to the extent it prevents the President from removing the Commission's members. *See Slaughter*, 146 S. Ct. at 2304–05.

**7. The Rule does not violate the Voting Rights Act.**

The argument that the Rule violates individuals' right to vote is also wrong because the Rule only regulates mail—not who can vote. Again, "states retain full control over how to utilize the mail in their

electoral systems, including by determining who is registered to vote and who is eligible to receive and send a mail-in ballot." 91 Fed. Reg. at 54977. And States decide whether they will use USPS to mail ballots. *Id.* at 54973. The Rule therefore will not deny voters determined to be eligible by their States from receiving and sending a ballot through the mail.

**8. The Rule does not violate the Privacy Act.**

The Rule does not violate the Privacy Act because the Rule does "not in any way" create "a federal voting database." 91 Fed. Reg. at 54977. *Contra* Doc. 5 at 15–17, *California*, No. 1:26-cv-13917-IT (The Rule "creat[es] a federal database of citizens' exercise of their right to vote by mail."). "[I]nstead, it establishes a mechanism whereby states can provide data, which is fully within their possession and control, regarding Federal Ballot mailings." 91 Fed. Reg. at 54977. So any argument to the contrary is factually wrong.

This argument is also legally wrong. The Privacy Act allows USPS to maintain records "necessary to accomplish a purpose of the agency required to be accomplished by statute or *by executive order*." 5 U.S.C. § 552a(e)(1) (emphasis added). Section 3 of Executive Order 14399

directed this rulemaking. And as explained above, USPS validly promulgated this Rule so there can be no Privacy Act violation. *See* 5 U.S.C. § 552a(e)(1).

Nor does the Rule violate the Privacy Act's restrictions on data related to how individuals exercise their First Amendment rights. *See* 5 U.S.C. § 552a(e)(7). While voter registration is protected by the First Amendment, *see Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999), "the fundamental right to vote does not extend to a claimed right to case an absentee ballot by mail," *Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020) (citing *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969)). So whether a voter casts his ballot by mail or in-person does not implicate the First Amendment. *See id.* But even if it did, USPS will only have access to States' absentee voter Participation Lists. *See* 91 Fed. Reg. at 54970. These lists without the content of the ballot—of which USPS does not have access—does "not run afoul of the proscription of Subsection (e)(7)." *Reuber v. United States*, 829 F.2d 133, 143 (D.C. Cir. 1987). Therefore, the Rule does not violate the Privacy Act's prohibition on maintaining records of First Amendment expression.

## II. The other stay factors favor Intervener States.

### A. Intervener States will be irreparably injured absent a stay.

Intervener States "indisputably ha[ve] a compelling interest in preserving the integrity of [their] election process[es]." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (citation omitted). This election integrity interest is particularly "acute when it comes to mail-in ballots." *Tex. LULAC v. Hughs*, 978 F.3d 136, 147 (5th Cir. 2020). This Rule directly addresses this "acute" interest by improving mail-in and absentee voting security in Intervener States. Doc. 234-1, Decl. Hoskins ¶6, *LWV*, No. 1:26-cv-11549-IT. Absent a stay, Intervener States who wish to benefit from the Rule's enhanced ballot transmission security provisions, like Intervener States, Doc. 234-1, Decl. Hoskins ¶9, *LWV*, No. 1:26-cv-11549-IT, will be directly and irreparably harmed through the loss of election integrity measures they lack the ability to implement on their own.

### B. The public interest favors a stay.

The third and fourth stay factors largely turn on the merits of the Rule. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (balance-of-the-equities and public interest "merge" when seeking relief against the

government). As explained above, the Rule is lawful. It is "always" in the public interest to enforce the law, *id.*, and a party cannot be harmed through the enforcement of a valid law, *see Tenn. Elec. Power Co. v. Tenn. Valley Authority*, 306 U.S. 118, 140 (1939). Therefore, Intervener States satisfy the remaining stay factors, and this Court should enter a stay.

### III. At a minimum, the Court should give States the *option* to comply with the Rule.

If the Court is inclined not to stay the preliminary injunction in its entirety, this Court should nonetheless limit its scope to Plaintiff States. Courts cannot give remedies "broader than necessary to provide complete relief to each plaintiff with standing to sue," *CASA*, 606 U.S. at 861, and here, the injunction's nationwide relief gives relief beyond the Appellees with standing. This Court has previously affirmed an injunction "only in the Plaintiff States." *California v. Trump*, 193 F.4th 52, 59 (2026), *rev'd on other grounds*, *Trump v. California*, 2026 WL 2473573.

Applying that rule here, the Court should limit any injunction to make clear that—for the 2026 General Election—States at least have the *option* to fully comply with the Rule. Some States—like Missouri—do not think complying with the Rule is especially burdensome and want to see increased security in their elections' mail voting. *See* Doc. 234-1, Decl.

Hoskins ¶¶4–9, *LWV*, No. 1:26-cv-11549-IT. There is no good reason to grant a remedy that prevents such *voluntary* compliance with the Rule. *See CASA*, 606 U.S. at 861. And indeed, the Court (and the whole country) might benefit from having real-world evidence of how the Rule operates in practice.

## CONCLUSION

For the foregoing reasons, this Court should enter a stay of the preliminary injunction.

Dated: September 6, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre, 1222562
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, #1215872
*Solicitor General*
Graham D. Miller, #1222440
*Deputy Solicitor General*
J. Michael Patton, #1223909
*Deputy Solicitor General*
Benjamin S. Gilberg, #1223910
*Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov
Michael.Patton@ago.mo.gov
Graham.Miller@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst, 1223911
*Solicitor General*
Jason J. Muehlhoff*
*Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta, 1204350
*Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez, 1223913
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**LIZ MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ Kelsey L. Smith*
Kelsey L. Smith, 1214635
*Deputy Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan, 1208173
*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett, 1218826
*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II, 1223914
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate, 1209409
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn, 1220093
*Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

/s/ *David Bryant*
David Bryant, 1222544
*Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 4,713 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Century Schoolbook typeface.

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III